**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony J. Ghersini,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-22-00198-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Anthony J. Ghersini's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16), Defendant Social Security Administration Commissioner's Response Brief (Doc. 19), and Plaintiff's Reply Brief (Doc. 20). The Court has reviewed the briefs, Administrative Record (Doc. 15, "R."), the Administrative Law Judge's ("ALJ") decision (R. at 200-10), and the Appeal Council's ("AC") decision (R. at 7-10) and affirms the ALJ's and AC's decisions for the reasons addressed herein.

**I.　BACKGROUND**

Plaintiff filed an application for DIB and Supplemental Security Income ("SSI") on May 5, 2017. Plaintiff later amended his alleged disability onset date to March 5, 2017, which invalidated his SSI claim because his date last insured had expired. (R. at 201).

Plaintiff's claims were denied initially and upon reconsideration and he appeared for an initial hearing before an ALJ in September 2019. (R. at 53-86). On November 5, 2019, the ALJ denied Plaintiff's claims. (R. at 168-83). However, Plaintiff's request for review of the decision was granted by the Appeals Council on July 6, 2020. (R. at 192-94). A second hearing was held before the ALJ in November 2020 and on December 18, 2020, the ALJ again denied Plaintiff's claims. (R. at 21-52, 200-210). Plaintiff timely requested review of the ALJ's decision and the Appeals Council granted the request on August 27, 2021. (R. at 399-402). The Appeals Council found that the ALJ's decision was not supported by substantial evidence because it failed to evaluate opinion evidence; however, the Appeals Council found under its own evaluation that the opinion evidence was not persuasive and affirmed the ALJ's decision. (R. at 399-400). On December 7, 2021, the Appeals Council issued its final decision affirming the ALJ's December 18, 2020, decision. (R. at 1-10). On February 7, 2022, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of congestive heart failure, hypertension, hyperlipidemia, hypothyroidism, diabetes mellitus, morbid obesity, bipolar disorder, anxiety disorder, panic disorder and borderline personality disorder. (R. at 203).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 210). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 203). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with certain function limitations and concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 204, 209).

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not

disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III.    ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) whether Plaintiff's symptom testimony was erroneously rejected, and (2) whether the Appeals Council erred in assessing the medical opinion evidence. (Doc. 16 at 1). Plaintiff also requests this Court to remand the case for an award of benefits. (*Id*. at 17-18).

### A.    The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony. (Doc. 16 at 15-16.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec.*

*Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's impairments encompassing congestive heart failure, hypertension, hyperlipidemia, hypothyroidism, diabetes mellitus, morbid obesity, bipolar disorder, anxiety disorder, panic disorder and borderline personality disorder. (R. at 203). Plaintiff asserted that he needed to rest upwards of sixteen hours a day and he could only sit for two hours. (R. at 205, 472). Plaintiff also alleged that he could not walk for more than five to ten feet before needing to rest for twenty minutes. (R. at 205, 511).

The ALJ considered the level of Plaintiff's medical issues and found that his "impairments could reasonably cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms fail to correspond with the explanations and evidence cited in this decision." (R. at 205). The ALJ then cited to specific examples in the record to support his findings. Plaintiff, however, argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony, and Plaintiff cannot sustain activity for a full workday. (Doc. 16 at 15-16). The Court does not agree with Plaintiff's arguments. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount his testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680. The ALJ also pointed to Plaintiff's non-

compliance with treatment recommendations and his daily activities as additional reasons for discrediting Plaintiff's symptom testimony.

Plaintiff's brief argument centers around his physical impairments causing him to have to lay down most of the day, his needle phobia, and his need to elevate his legs during the day, therefore the Court will consider that medical evidence in its analysis of the ALJ's decision. The ALJ's decision begins with discussion of an EKG in March 2017 which established an ejection fraction of twenty-five percent with mildly dilated right ventricle and left ventricular cavity. (R. at 206, 862, 1131). A nuclear stress test in May 2017 noted a large and partially reversible area of anteroapical and septal ischemia, a follow-up nuclear stress test in the same month noted no abnormalities. (R. at 206, 995, 1122). While an exercise test in September 2017 noted no abnormalities, a second episode of acute congestive heart failure was detected in December 2017. (R. at 206, 881, 1149, 1195, 1285-86). However, Plaintiff often denied shortness of breath, heart palpitations or angina during examinations. (R. at 206, 1052, 1109, 1027, 1189, 1192, 1659). The ALJ also considered Plaintiff's obesity as a contributing factor to Plaintiff's impairments. The ALJ noted that Plaintiff was 361.34 pounds, and his BMI score was 49.01 putting him in the morbidly obese range. (R. at 206, 1484) The ALJ acknowledged that Plaintiff's weight likely caused difficulties with his diabetes and hypothyroidism and the ALJ cited to Plaintiff's fear of needles as an additional difficulty in controlling diabetes. (R. at 206). However, the ALJ found that given this fear, the record indicated that Plaintiff continually failed to follow through with lifestyle changes like exercise and diet to aid in controlling his diabetes. (R. at 206, 1484-85, 1574). He was also warned that oral medication was not sufficient to control his diabetes. (R. at 206, 1484, 1688, 1776). Noncompliance as described may be sufficient to deny benefits outright or support an adverse credibility determination. *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatments prescribed by your medical source(s) if this treatment is expected to restore your ability to work."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (failure to follow a prescribed course of treatment weighs against a claimant's credibility).

The ALJ also found that in spite of Plaintiff's allegation that he needs to rest for sixteen hours per day, the record showed normal physical functioning during examinations. (R. at 206). The ALJ noted that Plaintiff occasionally had difficulty with balance and used a cane or walker at times, but the majority of his examinations exhibited a steady gait and normal stance without the use of assistive devices. (R. at 206, 3F/4, 4F/1, 9F/61, 12F/59, 14F/ 1123, 1133-34, 1147, 1151, 1284, 1319, 1380, 1512). The ALJ also pointed to multiple examinations in the record that found Plaintiff had normal strength, range of motion, normal reflexes, and sensation. (R. at 206, 628-30, 818, 890, 975, 1036, 1134, 1147, 1151, 1490, 1570, 1656). The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied his discussion of the medical evidence regarding Plaintiff's issues to the limitations Plaintiff claimed from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

Additionally, the ALJ found Plaintiff's daily activities illustrated he was more capable than alleged. (R. at 207). The ALJ noted that Plaintiff was able to prepare simple meals, wash dishes, shop for groceries and leave the house daily. (R. at 207, 474-75, 508, 628). Plaintiff argues that his daily activities are not enough to show he could perform work activity for a full day. (Doc. 16 at 15-16). However, Plaintiff's argument is without merit. "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Thus, the ALJ's finding that Plaintiff was not as limited as he alleged was reasonable.

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, non-compliance of treatments for Plaintiff's impairments, and Plaintiff's daily activities to discount his symptom testimony. There is sufficient evidence present to enable the Court to reasonably discern the ALJ's path to conclude that his decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ provided specific, clear and convincing reasons to dismiss Plaintiff's symptom testimony and those reasons were supported by substantial evidence.

**B.     The ALJ properly considered the medical opinion evidence.**

Plaintiff argues that the ALJ and Appeals Council failed to properly evaluate the medical opinions of his providers, Anantharam Kayla, M.D., Zaher Akkad, M.D., Youngsoo Cho, M.D., and Jenna Buchanan, M.D. by finding them unpersuasive. (Doc. 16 at 9-15).

Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered

the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

As a preliminary matter in the present case, Plaintiff argues that the ALJ failed to address the medical opinions of Dr. Cho, Dr. Akkad, and Dr. Kayla. (Doc. 16 at 9). While Plaintiff is correct in this assertion, the Appeals Council corrected this error during their review by addressing the medical evidence and opinions of these practitioners and adopted the ALJ's findings. Additionally, the regulations specifically state that, "it is not administratively feasible for us to articulate in each determination or decision how we

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record… We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). The regulations illustrate that an ALJ does not need to convey their consideration behind every limitation finding in a medical opinion.

### 1. Dr. Kayla

Plaintiff primarily argues that Dr. Kayla's opinion that Plaintiff has a need to elevate his legs during the day was not discussed by the ALJ and should have led to a finding of disability based upon the VE's opinion that a need to elevate legs would preclude employment. (Doc. 16 at 9). The Appeals Council remedied this missing analysis and acknowledged Dr. Kayla's opinion in their findings. Medical evidence showed that on September 5, 2019, Dr. Kayla's treatment note indicated that Plaintiff exhibited no calf tenderness and based on a previous 2017 ultrasound of Plaintiff's legs, there was no indication of blood clots. (R. at 1685-87). Recent lab tests showed Plaintiff's renal function was preserved and he did not wish to take diuretic therapy daily, but only on an as-needed basis. (R. at 1688). Due to Plaintiff's treatment choice, Dr. Kayla "suggested that he keep his feet elevated to 45 degrees if he is sitting up." (R. at 1688). The AC determined Dr. Kayla's opinion was unpersuasive because it was not a definitive opinion about his abilities. (R. at 8). The AC noted that a requirement to elevate legs was inconsistent with the state agency medical consultants' findings. (R. at 8, 109-11, 137-39). Although Dr. Kayla also noted an echocardiogram which showed an ejection fraction of twenty-five percent, the state agency medical consultants also considered this factor, but also pointed to treatment notes in the record that indicated no edema, normal gait and motor strength, and intact sensation. (R. at 103-06, 132-33). The AC found state agency medical consultant, Dr. Otrowski, more persuasive. (R. at 207). Dr. Otrowski noted Plaintiff's congestive heart failure was most likely attributed to non-ischemic cardiomyopathy, but follow-up examinations showed clear lungs, no edema, and normal strength. (R. at 137, 874, 991). By October 2017, Plaintiff was asymptomatic, felt well, and the only finding

was Plaintiff's morbid obesity. (R. at 138, 1191). Based upon this assessment, medical evidence showed that Plaintiff was not required to elevate his legs and he could perform a range of work from light to sedentary. (R. at 8, 109-11, 137-39). The ALJ's and AC's interpretation of the medical opinion evidence finding Dr. Kayla's leg elevation recommendation as a temporary suggestion and Dr. Otrowski's opinion more persuasive is a rational conclusion.

### 2. Dr. Cho

Dr. Cho submitted a check-box medical source statement regarding Plaintiff's impairments from September 2017 until December 2017. (R. at 1462-67). Dr. Cho noted that Plaintiff experienced shortness of breath and fatigue but did not list any other impairments. (R. at 1462). Dr. Cho deferred to Plaintiff's primary care provider with regards to any mental health symptoms. (R. at 1463). Dr. Cho opined that Plaintiff could only walk one block without rest, could sit for 45-60 minutes at a time, could lift up to ten pounds, and could stand as "tolerated." (R. at 1464-66). He also suggested Plaintiff would need unscheduled breaks. (R. at 1465). Dr. Cho opined that Plaintiff's legs should be elevated with prolonged sitting but failed to provide a length of time and only recommended, again, as "tolerated." (R. at 1465).

The AC found Dr. Cho's opinion unpersuasive because it was a temporary opinion that only covered a three-month period of time, and it was not consistent or supported by the medical record evidence. (R. at 8). "We have held that the ALJ may 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111-12 (citations omitted). The AC found Dr. Cho's opinion lacked supportability because he was unsure about all work-related limitations and deferred to Plaintiff's primary care physician. (R. at 8, 1467). The ALJ also referred to Dr. Cho's treatment notes which showed that an exercise test showed no abnormalities and Plaintiff denied angina. (R. at 206, 1192, 1195). Dr. Cho also documented no edema in his examination notes. (R. at 1191, 1198). The AC noted that Dr. Cho's opinion was inconsistent with other evidence in the record, including the ALJ's findings discussed in

his decision. (R. at 8, 206-08). Moreover, Plaintiff's own brief concedes that Dr. Cho "did indicate that the restrictions he assessed were meant to be temporary…" (Doc. 16 at 11). While Plaintiff attempts to use Dr. Kayla's leg elevation suggestion as a means to bolster Dr. Cho's opinion, as discussed above, Dr. Kayla's opinion was also found to be unpersuasive and temporary in nature. (Doc. 16 at 11).

### 3.     Dr. Akkad

Dr. Akkad submitted a check-box medical source statement regarding Plaintiff's impairments from April 13, 2017, until June 1, 2017. Dr. Akkad opined that Plaintiff was capable of a low-stress job, could walk less than one block, sit for more than two hours, and stand for one hour at a time. (R. at 1162-65). Dr. Akkad suggested Plaintiff should elevate his legs with prolonged sitting for sixty percent of a workday. (R. at 1164). Dr. Akkad further indicated that Plaintiff would have good and bad days, but he was unsure as to how many days Plaintiff would be absent from work due to his limitations, and he did not provide any further physical work-related limitations. (R. at 1166). Dr. Akkad also opined that patient would not need unscheduled breaks during the workday and he was unsure if Plaintiff's symptoms would last longer than twelve months. (R. at 1163-64).

The AC found Dr. Akkad's opinion unpersuasive because it was also a temporary opinion that only covered a three-month period of time, and it was not consistent or supported by the medical record evidence. (R. at 8). The AC determined Dr. Akkad's opinion lacked supportability because he was unsure about all work-related limitations and was temporary in nature. (R. at 8, 1166). The AC also found it inconsistent with other evidence, including the ALJ's findings discussed in his decision. (R. at 8, 206-08). Plaintiff again relies upon Dr. Kayla's opinion and an additional opinion of Dr. Buchanan to support their view that Plaintiff had an ongoing need to elevate his legs, and this would preclude him from competitive work. (Doc. 16 at 12). As previously discussed, the Court does not support Plaintiff's arguments.

### 4. Dr. Buchanan

Dr. Buchanan submitted a check-box medical source statement regarding Plaintiff's impairments on October 6, 2020, and opined that Plaintiff could occasionally lift five pounds, sit for one hour, walk for one hour and stand for one hour. (R. at 1767, 1769). Dr. Buchanan further found that Plaintiff needed to elevate his legs. (R. at 1766). However, Dr. Buchanan noted that because of "constraints regarding COVID, I was unable to perform face to face evaluation of patient's functional limitations. All of the above documented limitations are based on patient-reported limitations and per review of medical records from patient's multi-disciplinary care team." (R. at 1770).

The ALJ found Dr. Buchanan's opinion was unpersuasive (R. at 207). The ALJ noted that Dr. Buchanan's opinion lacked supportability because the suggested limitations were based in part on Plaintiff's own reported limitations. (R. at 207, 1770). *See Flaten v. Sec'y of Health and Human Servs.,* 44 F.3d 1453, 1463-64 (9th Cir. 1995) (an ALJ is entitled to discount a doctor's assessments that are based upon the claimant's own reports). The ALJ found that the medical record was inconsistent because it failed to support such extreme limitations that would have implied the Plaintiff was bed ridden. (R. at 207). The ALJ's findings of the medical record referenced normal strength, range of motion, sensation, and reflexes. (R. at 207-08) (citations omitted). Plaintiff argues that the ALJ mischaracterized Dr. Buchanan's assessment as bedridden as these limitations were addressed for an eight-hour workday, which is different from daily activities. (Doc. 16 at 13). However, it's clear from the record that the ALJ acknowledged Dr. Buchanan's opinion of Plaintiff's limitations and they were based upon an eight-hour workday as he stated as such in his decision. (R. at 207). It is also clear that an ALJ may properly rely on evidence of a plaintiff's activities to discount a doctor's opinion about the plaintiff's ability to perform simple work. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Plaintiff further argues that records show the Plaintiff had to use a cane or wheelchair when he had to go out and this is consistent with the limitations set forth by Dr. Buchanan. (Doc. 16 at 13, 1696). Plaintiff's argument is unpersuasive because the ALJ also pointed to

numerous notations in the record where Plaintiff exhibited normal stance and steady gait without an assistive device. (R. at 206, 629, 635, 1060, 1120, 1123, 1134, 1284, 1380, 1512). The ALJ also cited to records showing normal strength, normal reflexes and sensation, and normal range of motion. (R. at 206-08, 628-30, 818, 890, 1036, 1147, 1490, 1570, 1656). An ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Plaintiff's final argument claimed that the ALJ had a duty to contact Dr. Buchanan to develop the record since the ALJ alleged that it was unclear which limitations are based on the Plaintiff's subjective reports and which were based on objective medical evidence. (Doc. 16 at 14, 207). Plaintiff's argument is without merit as an ALJ only has a duty to further develop the record when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted). The ALJ had a multitude of medical opinions and a vast medical record of treatment notes to make a fully informed decision, including Dr. Buchanan's own treatment notes.

It is clear to the Court that the AC and ALJ cited to specific examples in the medical record that were inconsistent with the medical opinions discussed above regarding Plaintiff's limitations. The AC together with the ALJ's findings fully articulated how persuasive they found all the medical opinions from each source. It is apparent from the record that the AC and ALJ provided substantial evidence to sufficiently support their decision. Plaintiff's arguments only seek to offer alternative interpretations of the evidence, which the Court does not support. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.   CONCLUSION

The Court finds that substantial evidence supports the Commissioner's nondisability determination. Plaintiff's symptom testimony was appropriately discounted by specific, clear, and convincing reasons supported by substantial evidence, and the

medical opinion evidence was properly considered. Therefore, the Court finds that substantial evidence exists to support the Commissioner's nondisability determination. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 22nd day of May, 2023.

Honorable John J. Tuchi
United States District Judge